IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELVIN S. TAYLOR                           CV 05-1133-MA

          Plaintiff,                       OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

          Defendant.


DAVID B. LOWRY
9900 S.W. Greenburg Rd.
Columbia Business Center
Portland, OR 97223
(503) 245-6309

          Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

1 - OPINION AND ORDER

THOMAS M. ELSBERRY
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2112

     Attorneys for Defendant

MARSH, Judge.

     Plaintiff filed a civil action for judicial review of a final decision of the Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33.  Plaintiff alleges the Administrative Law Judge (ALJ) erred in finding he is not entitled to benefits and seeks an order reversing the Commissioner's decision and remanding the case for further proceedings.  The Commissioner contends her decision is based on substantial evidence and is free from legal error.  The Commissioner, therefore, requests that the court affirm her decision.

     This court has jurisdiction under 42 U.S.C. § 405(g).  For the following reasons, the court REVERSES the final decision of the Commissioner and REMANDS this action for further proceedings as set forth below.

**BACKGROUND**

     Plaintiff claims he is disabled because of left-eye blindness, right eye vision loss, and headaches.

2 - OPINION AND ORDER

**Plaintiff's Education and Employment History**.

As of the date of the final decision, plaintiff was 47 years old.  He has a high school education.  He has worked as a shipping and receiving clerk, service station attendant, correction officer, production collator operator, and forklift operator.

**Plaintiff's Relevant Medical History**.

The medical documentation primarily reflects plaintiff has been examined and treated for vision impairments.

A.J. Zelada, O.D.

In January 2002, Dr. Zelada, an optometrist with Fremont Family Vision, examined plaintiff's eyesight.  Dr. Zelada noted plaintiff "has central blindness in left eye secondary to retinal hyperplasia involving the macula."  Although Dr. Zelada found plaintiff's "central sharp vision is poor in left eye," he declined to sign a blind disability pass to allow plaintiff to ride TriMet busses at a discounted rate because plaintiff "has full visual fields and excellent sharp vision in the right eye" and needed "only a slight correction in the right for distance."

Jeffrey Carkner, O.D.

Dr. Carkner, an optometrist with Carkners' Family Vision Care examined plaintiff in January and October 2002.  Dr. Carkner noted a "rapid onset" of acuity loss in plaintiff's right eye, from 20/15 in January to 20/60 in October.

3 - OPINION AND ORDER

Irvin L. Handelman, M.D.

On November 1 and November 6, 2002, shortly after he filed this disability claim, plaintiff was examined by Dr. Handelman, an opthamologist at Retina Northwest, P.C.  Dr. Handelman noted plaintiff's visual acuity in his right eye decreased in the space of a day from 20/60 to 20/400.  He also noted the "mild pathology in the macula" of plaintiff's right eye "does not explain his level of visual loss."  Dr. Handelman referred plaintiff to the adult eye clinic at Casey Eye Institute for further evaluation because of the "potentially complex problem and [plaintiff's] lack of financial resources."  An appointment was made for plaintiff to see Dr. Gattey at the Institute on November 13, 2002.  Plaintiff did not keep the appointment.

William T. Shults, M.D.

On January 23, 2003, Dr. Shults, a neuro-opthamologist at the Devers Eye Institute, examined plaintiff at the request of the Disability Determination Service.  He measured Plaintiff's visual acuity in his right eye at 20/400, but he could not find "an organic explanation for [plaintiff's] professed degree of visual loss in either eye."  He recommended an MRI scan because "I don't believe that [plaintiff] has been adequately assessed at this point in terms of his intercranial visual pathway."  Dr. Shults suggested plaintiff should establish himself at Devers

4 - OPINION AND ORDER

Memorial Eye Clinic where funding might be available to perform the MRI.  Dr. Shults declined to "verify the legitimacy of [plaintiff's] claimed visual impairment" because plaintiff's "intercranial visual pathway has not yet been cleared."

**Plaintiff's Disability Claim**.

Plaintiff applied for disability insurance benefits on October 17, 2002, alleging the onset of disability as of October 15, 2002.

Plaintiff returned to full-time employment in the shipping and receiving department of American Machine & Gear in August 2004.  As of the date of the hearing on October 27, 2004, plaintiff was earning $12.50 per hour, which constitutes substantial gainful activity.  Accordingly, the issue for the ALJ was whether plaintiff was disabled for the period from October 15, 2002, until his return to full-time employment in August 2004.

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 404.1520.  Plaintiff bears the burden of proof at Steps One through Four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

Here, at Step One, the ALJ found plaintiff had not engaged

5 - OPINION AND ORDER

in substantial gainful activity from the onset of his alleged disability through August 2004.  20 C.F.R. § 404.1520(b).

At Step Two, the ALJ found plaintiff suffers from long-standing traction maculopathy of uncertain etiology in his left eye that is a severe impairment within the meaning of 20 C.F.R. § 404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairment does not meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(iii) and (d).

The ALJ found plaintiff has no exertional limitations as to standing, sitting, or walking, and no manipulative or communicative limitations.  Plaintiff may frequently balance, stoop, kneel, crouch, and crawl.  The ALJ, however, also found plaintiff should only occasionally climb on ramps or stairs, and should never climb on ladders, ropes, or scaffolds, and he should avoid concentrated exposure to hazards, including machinery or heights.  In light of these limitations, the ALJ found plaintiff has the residual functional capacity to perform heavy exertion work narrowed only slightly by his postural and visual limitations.

6 - OPINION AND ORDER

At Step Four, the ALJ found plaintiff is able to perform his past relevant work as a production collator operator and correction officer.

Based on the above finding, the ALJ did not address Step Five in the sequential evaluation (plaintiff's ability to adjust to other available work).  20 C.F.R. § 404.1520(a)(4)(v).

Accordingly, the ALJ found plaintiff was not under a disability and denied his claim for disability insurance benefits.

Plaintiff appealed the denial of benefits to the Appeals Council.  On June 22, 2005, the Appeals Council affirmed the ALJ's decision and, therefore, that decision became the final decision of the Commissioner for purposes of judicial review.

### LEGAL STANDARDS ON JUDICIAL REVIEW

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
1995).

    The court must weigh all of the evidence whether it supports
or detracts from the Commissioner's decision.  Martinez v.
Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's
decision must be upheld, however, even if the "evidence is
susceptible to more than one rational interpretation."  Andrews,
53 F.3d at 1039-40.

    The Commissioner bears the burden of developing the record.
DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty
to further develop the record, however is triggered only when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  Mayes v. Massanari,
276 F.3d 453, 459-60 (9th Cir. 2001).

    The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert.
denied, 121 S. Ct. 628 (2000).  "If additional proceedings can
remedy defects in the original administrative proceeding, a

8 - OPINION AND ORDER

social security case should be remanded." <u>Lewin v. Schweiker</u>,
654 F.2d 631, 635 (9th Cir. 1981).

**DISCUSSION**

Plaintiff contends the ALJ erred by (1) failing to develop
the record by ordering an MRI of plaintiff's right eye and a
neuropsychological examination, (2) failing to properly evaluate
plaintiff's residual functional capacity, (3) finding plaintiff
could perform his past relevant work without comparing his
present functional capabilities with the requirements of that
work, (4) improperly rejecting the lay witness testimony, and
(5) improperly rejecting plaintiff's testimony.

Plaintiff seeks an order remanding this case to the ALJ for
further proceedings.

**<u>Development of the Record</u>.**

Plaintiff contends the ALJ failed to develop the record by
refusing to order a neuropsychological examination.  The record,
however, is devoid of any indication plaintiff suffers from a
mental impairment that would suggest the need for such an
examination.

At the conclusion of his hearing, however, Plaintiff also
requested an MRI of his eyes.  The ALJ refused the request,
stating "We don't furnish MRI's that already been long gone.
We don't pay for them."  The Commissioner asserts plaintiff

9 - OPINION AND ORDER

was too late in requesting an MRI, noting plaintiff failed to avail himself of the opportunity to obtain an MRI even though an appointment was made on his behalf for that purpose by Dr. Handelman.  In addition, the Commissioner points out plaintiff did not pursue further care at the Devers Memorial Eye Clinic, as suggested by Dr. Shults, which might have led to funding for an MRI.[1]  Finally, the Commissioner asserts the fact plaintiff was working full-time when the hearing took place negates any suggestion that an MRI was necessary on the issue of disability.

There appears to be no dispute that plaintiff did not have the financial resources to pay for an MRI.  Because an MRI was not performed, neither Dr. Handelman nor Dr. Shults could determine whether there was an organic cause for the loss of visual acuity in plaintiff's right eye, and in the case of Dr. Shults, to verify the legitimacy of plaintiff's claimed loss of vision.  Indeed, the importance of an MRI in this case was highlighted by Dr. Gerald Brooksby, the Commissioner's medical witness at the hearing.  He noted Dr. Shults' recommendation that an MRI be obtained to determine if there was an organic cause for the decrease in visual acuity from 20/60 to 20/400.  In the absence of an MRI, Dr. Brooksby testified "there's nothing in

---

[1] The Commissioner acknowledges the agency would have paid for an MRI if there had been insufficient evidence to determine if plaintiff was disabled.

10 - OPINION AND ORDER

[plaintiff's] record that would indicate an organic cause for the level of his vision to be 2400 (*sic*), which meets the definition of legal blindness for sure."

There is no specific affirmative evidence in the record that plaintiff exaggerated the vision loss in his right eye. The fact that three eye specialists could not rule out an organic cause for plaintiff's vision loss in the absence of an MRI suggests the need for one. It is clear the record is inadequate to allow a proper evaluation of plaintiff's vision loss in his right eye without one. The Commissioner bears the burden of developing the record. DeLorme, 924 F.2d at 849. That burden was triggered in this case. Mayes, 276 F.3d at 459-60. The ALJ failed to meet that burden. Moreover, I find the need for the MRI was not clearly obviated by evidence that plaintiff had returned to full-time work at the time of the hearing. The record on plaintiff's return to work and the circumstances of that return were not developed in the agency proceedings.

For these reasons, the court concludes the ALJ erred in failing to obtain an MRI to determine whether an organic cause exists for plaintiff's claimed loss of vision in his right eye. Accordingly, the court concludes this matter must be remanded to the Commissioner to obtain an MRI.

Plaintiff's remaining objections to the ALJ's findings regarding his credibility, the credibility of lay witnesses, and

the determination of his ability to perform his past relevant work in light of his residual functional capacity, may well depend on the results of the MRI. The court, therefore, declines to address those objections pending the MRI results.

## CONCLUSION

For these reasons, the Court REVERSES the final decision of the Commissioner and REMANDS this case for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 16 day of October, 2006.


    /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

12- OPINION AND ORDER